Filed 4/11/22  P. v. Villanueva CA5

<u>**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**</u>

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIFTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE,<br><br>        Plaintiff and Respondent,<br><br>                v.<br><br>ARMANDO VILLANUEVA,<br><br>        Defendant and Appellant. | F080726<br><br>(Super. Ct. No. DF012944A)<br><br><br>**OPINION** |

APPEAL from a judgment of the Superior Court of Kern County.  Michael E. Dellostritto, Judge.

Cara DeVito, under appointment by the Court of Appeal, for Defendant and Appellant.

Xavier Becerra, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Michael P. Farrell, Assistant Attorney General, Julie A. Hokans and Jessica C. Leal, Deputy Attorneys General, for Plaintiff and Respondent.

-ooOoo-

Armando Villanueva was convicted by jury of 10 counts of sexually abusing minor girls at a daycare operated by his wife.  He raises a single issue on appeal:  Did the

trial court err in excluding evidence he was sexually interested in "adult Caucasian women, not children?"

We conclude the court did not err and, even had it erred, the error would be harmless based on other evidence presented indicating Villanueva was neither sexually deviant nor suggestive of pedophilia. Accordingly, we affirm the judgment.

## BACKGROUND

**Charges**

The Kern County District Attorney charged Villanueva with 10 crimes: lewd act on a child under age 14 (Pen. Code,[1] § 288, subd. (a); Count 1), oral copulation on a minor under age 14 (§ 288a, subd. (c)(1); Count 2), lewd act on a child under age 14 (§ 288, subd. (a); Count 3), oral copulation on a minor under age 14 (§ 288a, subd. (c)(1); Count 4), lewd act on a child under age 14 (§ 288, subd. (a); Count 5), lewd act on a child under age 14 (§ 288, subd. (a); Count 6), lewd act on a child under age 14 (§ 288, subd. (a); Count 7), lewd act on a child under age 14 (§ 288, subd. (a); Count 8), lewd act on a child under age 14 (§ 288, subd. (a); Count 9), and lewd act on a child under age 14 (§ 288, subd. (a); Count 10).[2] Counts 1, 3, 5, 6, 7, 8, 9, and 10 included multiple victim special circumstance allegations (§ 667.61, subd. (e)(4)).

**Trial Evidence[3]**

Villanueva's wife operated a daycare for many years out of the family home. Sometimes, Villanueva's wife would leave to run errands, leaving Villanueva as the only

---

[1] Undesignated statutory references are to the Penal Code.

[2] The offenses in this case occurred before section 288a was renumbered to section 287. The current section proscribing the acts constituting Counts 2 and 4 is section 287, subdivision (c)(1).

[3] We summarize the evidence presented at trial because we largely believe the details are immaterial to the issue on appeal. To the extent the details are relevant, for example when considering prejudice, Villanueva can rest assured we have read and considered the entire record.

adult at the daycare.  Eight victims ultimately came forward and disclosed sexual abuse at the daycare.

Victim one estimated Villanueva sexually abused her more than 100 times (Counts 1 & 2).  She also saw him abuse victims two, four, and five.

Victim two described various sexual abuse perpetrated by Villanueva (Counts 3 & 4).[4]  Victim three testified Villanueva sexually abused her on five distinct occasions (Count 5).  Victim four described at least five incidents in which Villanueva sexually abused her, and stated she witnessed him abuse victims two and three (Count 6).

Victim five testified to approximately six instances of sexual abuse committed by Villanueva (Count 7).  She also saw Villanueva abuse victim four.  Victim six described Villanueva sexually abusing her "[e]very day" (Count 8).

Victim seven explained she was twice sexually abused by Villanueva (Count 9).  She once saw Villanueva take victim one into a room and close the door.  Victim eight testified to numerous and various acts of sexual abuse perpetrated by Villanueva (Count 10).  She claimed victim one witnessed one of the incidents but victim one did not corroborate the specific act.[5]

Several expert witnesses also testified at the trial.  One expert testified he performed several tests on Villanueva and opined Villanueva was not "impulsive," not a "risk taker," disorganized, lacked "cognitive flexibility," did not exhibit "deviant sexual interest or sexual behaviors," and not consistent with pedophilia.[6]

---

[4] Victim two described being abused with victim one.  Victim one partly corroborated that testimony.

[5] This is just one example of several inconsistencies in the evidence.  The inconsistencies were of varying significance.  Villanueva focused on inconsistencies throughout the trial as part of his defense.

[6] Other experts testified about "child sexual abuse accommodation syndrome" and "children suggestibility and forensic interviewing."

**Verdict and Sentence**

Villanueva was found guilty as charged. The multiple victim special circumstances were found true. He was sentenced to serve 190 years to life in prison.

## DISCUSSION

The sole issue in contention is whether the trial court abused its discretion in excluding expert opinion testimony Villanueva did "not have a sexual interest in children, therefore his character [was] not consistent with that of a typical child molester …." The People contend the court properly excluded the evidence and if not, "any error was harmless …."

We conclude the court did not abuse its discretion in excluding the evidence. We also explain why any error would be harmless based on this record.

### Additional Background

Two expert witnesses testified about the Abel test. The first expert, at an Evidence Code section 402 hearing outside the jury's presence, explained, "The Abel test really only has one purpose and that is to determine what someone's sexual interest is."

The test is based on "laws of attraction …." Essentially, 80 photographs are displayed one by one on a computer screen. The subject must "imagine being sexual with the model [in the picture]" and then "hit enter when" finished. The computer measures the time spent in "milliseconds for each of the categories" of photographs. The test also involves a "history" or "questionnaire" about "drug abuse, psychological issues[, and] any sexual interest or problems in the past."[7]

The test is scored and then compared against "community norms …." When the scores exceed "community norms," the subject's sexual interest is identified.

---

[7] This testimony was presented at an Evidence Code section 402 hearing by an expert that did not testify before the jury.

The second expert witness testified both at an Evidence Code section 402 hearing and before the jury. At the hearing, the expert acknowledged he did not administer the entire Abel test. Instead, he gave the history or questionnaire portion and then relied on the first expert's results related to the photographs. In response to the court's question whether the expert "gave questionable validity to [the questionnaire] results," the expert answered, "That's correct."

The court ruled the expert opinion based on the Abel test lacked foundation because it was not "designed … to be diagnostic." The court primarily based its ruling on *People v. Fortin* (2017) 12 Cal.App.5th 524 (*Fortin*) where the appellate court found, in part, the Abel test "has not gained acceptance as a way to prove or disprove an accused's sexual interest in children during the guilt phase of a criminal trial." (*Id.* at p. 534.)

Subsequent to the ruling, the second expert testified at the trial. He explained performing various tests on Villanueva and related several facts and opinions based on those results. One opinion was the various testing *could* be used to diagnose pedophilia[8] but Villanueva's results were not suggestive of it.[9] He also explained Villanueva's reported sexual history was "mild and unremarkable" with no "deviant sex acts."[10] Other testing, too, did not "generate any red flags about deviant sexual interest or sexual behaviors."

---

[8] For the jury's benefit, pedophilia was defined, partially, as a persisting, recurring sexual interest in prepubescent minors.

[9] The expert did not actually form a diagnosis. Instead, he suggested it was possible to do so based on some of the testing provided, and stated none of those results indicated pedophilia.

[10] The expert acknowledged Villanueva was defensive in his responses but the expert believed "that was actually appropriate given" the circumstance the interview was not entirely private.

**Analysis**

" 'The trial court has broad discretion in deciding whether to admit or exclude expert testimony [citation], and its decision as to whether expert testimony meets the standard for admissibility is subject to review for abuse of discretion.' " (*People v. Duong* (2020) 10 Cal.5th 36, 60.) A decision to exclude expert testimony " ' " 'will not be reversed merely because reasonable people might disagree [with it]. "An appellate tribunal is neither authorized nor warranted in substituting its judgment for the judgment of the trial judge." ' " ' " (*People v. McDowell* (2012) 54 Cal.4th 395, 429-430.) " '[A] trial court … abuse[s] its discretion [only when] its decision is so irrational or arbitrary that no reasonable person could agree with it.' " (*Id.* at p. 430.)

We discern no abuse of discretion in this case. The expert that testified at trial did not conduct the entire Abel test and conceded the portion he did administer yielded questionable results.[11] A decision to exclude incomplete testing with questionable results is not patently unreasonable.[12] (Cf. *Fortin, supra,* 12 Cal.App.5th at p. 534 [Abel test

---

[11] Not only did the second expert base his Abel-test-result opinions on the first expert's testing, but that expert in turn relied on the Abel Institute to score the test. Indeed, that is the only way to score the test.

[12] A primary argument in the trial court and on appeal is whether the Abel test has gained acceptance for use in a criminal jury trial. We need not decide the issue because we find the court properly excluded the evidence for a different reason. (*People v. Geier* (2007) 41 Cal.4th 555, 582 [" '[A] ruling or decision, itself correct in law, will not be disturbed on appeal merely because given for the wrong reason.' "].)

To be fair, we agree the Abel test could, under certain circumstances, function properly as proffered in this case, i.e., for use in a criminal jury trial. As acknowledged by the trial court in this case, the Abel test was admitted into evidence in the trial underlying *People v. Saldana* (2018) 19 Cal.App.5th 432 (conviction reversed for *Miranda* error). In that case, there was no objection that the test was not generally accepted in the relevant scientific community. (See *People v. Nieves* (2021) 11 Cal.5th 404, 444.) Again, we need not decide the issue because we find the evidence was properly excluded on separate grounds, i.e., the incompleteness and questionable validity of the testing.

properly excluded where witness is surrogate rather than "providing his '*individual interpretation*' of the test."].)

In any event, if error, the exclusion of evidence was harmless. The jury listened to the expert testify Villanueva denied sexual deviance, no test raised a concern about sexual deviance, and the overall test results were not suggestive of pedophilia. Additional testimony Villanueva was sexually interested in "adult Caucasian women" adds nothing to these points. Indeed, it is quite obvious the test results and opinions presented to the jury showed Villanueva was neither sexually interested in minors nor sophisticated enough to perpetrate continuous, widespread abuse.[13]

Evidence Villanueva was sexually interested in "adult Caucasian women" is immaterial because it does not make more persuasive the evidence he was neither sexually deviant nor pedophilic.[14] We do not believe specific evidence Villanueva preferred adults to minors would alter the outcome of the trial because there was already significant evidence he was not sexually deviant, i.e., interested in minors.[15] (See *People v. Jones* (2012) 54 Cal.4th 1, 67-68 [applying reasonable-probability-for-more-favorable-result standard to an assumed erroneous exclusion of expert testimony].)

---

[13] The jury, of course, was free to disregard the opinion evidence.

[14] On this point, Villanueva argues "the single most important test, which would have advised the jury that [his] sexual interest was in adult Caucasian women … was excluded from evidence. As a result, allowing appellant to introduce 'some' evidence in his defense was no panacea for precluding him from introducing one of the most important points in his defense." We simply disagree it was meaningfully different from the evidence presented to the jury. Whether victim testimony was " 'overwhelming' " or not is irrelevant to why the court's ruling was not prejudicial.

[15] For the same reasons, we reject Villanueva's contention the trial court denied his "right to present a full defense" or his right "to due process." "[A]pplication of the ordinary rules of evidence … does not 'impermissibly infringe on [the] right to present a defense.' " (*People v. Dworak* (2021) 11 Cal.5th 881, 899.) The same is true for due process.

**DISPOSITION**

The judgment is affirmed.


SNAUFFER, J.

WE CONCUR:


LEVY, ACTING P. J.


POOCHIGIAN, J.

8.